```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
SHARYN BROWN,                              :
                Plaintiff,                 :    04 Civ. 1232 (PAC)
                                           :
     -  against -                          :    OPINION
                                           :    AND ORDER
ANTHONY PRINCIPI, Secretary,               :
UNITED STATES DEPARTMENT OF                :
VETERANS AFFAIRS                           :
                Defendants.                :
-------------------------------------x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Sharyn Brown brings this action against Defendant R. James Nicholson, in his official capacity as United States Secretary of Veterans Affairs,[1] under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, et seq.[2] Plaintiff alleges that her employer, the New York Harbor Healthcare System, Manhattan Campus, of the Department of Veterans Affairs (the "VA Hospital"), subjected her to employment discrimination and retaliation based on her alleged disability, fibromylagia syndrome ("FMS").[3] Defendant now moves for summary judgment.

## BACKGROUND[4]

**I. Plaintiff's Position as a Respiratory Therapist**

Plaintiff has been employed as a Respiratory Therapist ("RT") by the VA Hospital since 1988. Her duties include monitoring patients, providing treatment,

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), the current Secretary is automatically substituted for former Secretary and original defendant Anthony J. Principi.
[2] Plaintiff has withdrawn her claims under New York Executive Law §§ 290 et seq., and New York City Administrative Code §§ 8-101 et seq. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, 1 n. 1.
[3] At oral argument on December 8, 2006, Plaintiff confirmed that her initial claim of hostile work environment was abandoned.
[4] All facts are derived from the Complaint and the parties' Local Rule 56.1 Statements and supporting evidence. Sources will be cited only when quoted. The facts are undisputed unless otherwise indicated.

obtaining equipment such as oxygen tanks, and making floor calls and rounds. These duties involve a great deal of physical activity, including substantial amounts of walking, pushing, pulling and lifting, as well as prolonged periods of sitting or standing.

### *RT Shifts Assignments*

Starting in 1998, the VA Hospital required RTs to work ten eight-hour shifts every two weeks.[5] The three daily shifts were known as the day (8am-4pm), evening (4pm-midnight), and night (midnight-8am) shifts, and RTs were, as a general matter, assigned full-time to one of the three. Each shift had a minimum staffing level, and RTs were required to perform mandatory overtime shifts when necessary to cover staffing shortfalls. Plaintiff was assigned to the night shift when she first joined the VA Hospital staff.

Helen Planzos ("Planzos"), the Technical Director of the Respiratory Therapy Department, set the staffing levels of each shift and the monthly work schedules of every RT. Planzos declares that both the evening and night shifts were staffed at or above the minimum level during the period covered by this action, but it is undisputed that there were staffing shortages on the day shift. Planzos also declares that she believed that when RTs had to be transferred from one shift to another, the terms of the union contract at the VA Hospital required that they be transferred in order of seniority. During the relevant period, Plaintiff was the least-senior RT assigned to the night shift after April 2001, when a night shift RT with less seniority was reassigned to the day shift.

### *Night Shift and Day Shift Duties*

The duties of RTs are the same regardless of shift, though the day shift is busier than the night shift and also has higher staffing levels. Plaintiff alleges that the

---

[5] Prior to 1998, RTs were required to work six twelve-hour shifts and one eight-hour shift every two weeks.

2

day shift required a greater degree of physical activity and produced more stress than the night shift, essentially due to the extra activity. The senior night shift RT, Genetha Middleton ("Middleton") testified to the contrary, opining that the lower staffing levels result in night shift RTs working harder than day shift RTs.

**II. Plaintiff's Requests for Accommodation Prior to 2002**

On November 23, 1998, Plaintiff first submitted a request to the Chairperson of the Reasonable Accommodation Committee ("RAC"), asking that she not work shifts longer than 12 hours because of her FMS. The RAC never responded. More than two years later, on January 28, 2001, Plaintiff submitted another request, asking that she not be assigned to consecutive shifts at a data entry workstation (the "stat lab"), which required prolonged sitting and, allegedly, body contortions. The RAC again failed to respond. On July 2, 2001, at Planzos's suggestion, Plaintiff renewed her 1998 request not to work more than 12 consecutive hours. The request was granted in or around November 2001.

**III. 2002 Assignment to the Day Shift and Request for Accommodation**

In March 2002, Planzos assigned Plaintiff to a mix of day and night shifts. The least-senior evening shift RT was also assigned to the day shift at times during this period. On March 8, 2002, Plaintiff requested that she not be assigned to the day shift, and the request was formally denied on June 6, 2002. Planzos continued to assign Plaintiff to mixed shifts until June 2002, though Plaintiff did not report for most of the day shifts to which she was assigned. In or around June 2002, Planzos assigned Plaintiff

exclusively to the day shift, and Plaintiff requested and was denied leave under the Families and Medical Leave Act.  On July 3, 2002, Plaintiff filed an informal complaint with an Equal Employment Opportunity (EEO) counselor.  Having used all her remaining sick leave and vacation time, Plaintiff took unpaid leave and did not return until her reassignment to the night shift in November 2002.  Plaintiff testified that the day shift became fully staffed that October.

**IV. Medical Evidence of Disability Presented to the VA Hospital**

In making her various requests for accommodation, Plaintiff submitted three letters by her physician Dr. Marjorie Lee, and one letter by her rheumatologist Dr. Sicy Lee.  These letters established that Plaintiff suffered from FMS, and stated that as result she could not work more than 12 consecutive hours, or sit for prolonged periods of time.  Dr. Sicy Lee's letter of August 8, 2001 also noted that after working 16 hour shifts Plaintiff was "unable to gain restorative sleep." Affidavit of Sharyn Brown ("Brown Aff."), Exhibit G.  Finally, Dr. Marjorie Lee's letter of March 8, 2002 stated that Plaintiff should not be assigned to the day shift because the increased physical exertion required exacerbated her condition, as did the "sleep deprivation" Plaintiff suffered when her "sleep/wake cycle [was] disrupted." Brown Aff. Exhibit I.

**DISCUSSION**

**I. Summary Judgment Standard**

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II. Timeliness of Plaintiff's Claims**

Federal employees are required to make an internal EEO complaint within 45 days of an allegedly discriminatory action, unless, inter alia, "he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(1)-(2). That 45-day period functions as a statute of limitations for claims in federal court. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1996); see also Guice-Mills v. Brown, 882 F.Supp. 1427, 1430 (S.D.N.Y. 1995) (applying rule to claims under the Rehabilitation Act).

Plaintiff acknowledges that her first EEO complaint did not occur until July 3, 2002, but maintains nonetheless that her claims are timely. First, she asserts that she was not notified or otherwise aware of the required procedures and time limits. Large

5

posters containing the required EEO procedures were prominently posted at the VA Hospital since at least 1999, however, and a brochure covering the procedures was distributed to all employees in November 1999. Such measures have routinely been held to constitute constructive notice to employees exposed to them, in the face of which the § 1614.105(a)(2) exception is unavailable. See, e.g., Marinelli v. Chao, 222 F.Supp.2d 402, 412 (S.D.N.Y. 2002); Judge v. Henderson, 172 F.Supp.2d 410, 414 (S.D.N.Y. 2001). Plaintiff was accordingly on notice of the required procedures no later than November 1999, and her first argument is rejected.

Plaintiff also advances the novel theory that her cause of action for failure to accommodate her disability accrues on each date after she makes a request for accommodation until that request is officially granted, even if her treatment on each date is entirely consistent with her request. Under Plaintiff's theory, even had her request not to work more than 12 consecutive hours been prompted by a single, never repeated, 16-hour shift in 1992, she would still have a timely claim as long as the VA Hospital had not officially granted that request in the decade since. This argument is absurd on its face and would completely vitiate the 45-day limitation, whose purpose is to require employees to raise discrimination promptly as it occurs. Plaintiff was injured only when the VA Hospital failed to accommodate her disability, not when it failed to respond officially to her requests, and the latter does not toll the limitations period.

Plaintiff's claims based on conduct by the VA Hospital prior to May 19, 2002, 45 days prior to her July 3 complaint, are time-barred.[6]

---

[6] Defendant argues that Plaintiff's retaliation claims based on her requests for reasonable accommodation must be dismissed because Plaintiff's EEO complaint did not include such a claim. A fair reading of Plaintiff's EEO complaint encompasses such claims, however.

6

**III. The Discrimination Claim**

A plaintiff can make out a claim of discrimination under the Rehabilitation Act by showing (1) that the employer is subject to the Act; (2) that the plaintiff is an individual with a disability; (3) that, with or without reasonable accommodation, the plaintiff could perform the essential functions of her job; and (4) that the employer had notice of the disability and failed to provide a reasonable accommodation. Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995). An "individual with a disability" under the Rehabilitation Act is one who, inter alia, "has a physical or mental impairment which substantially limits one or more of such person's major life activities." U.S.C. § 705(20)(B). Working, walking, standing, sitting, sleeping, and lifting are unquestionably "major life activities," Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642 (2d Cir. 1998), and a "substantial limitation" is a limitation that renders the individual

> significantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(ii).

"Courts in the Second Circuit have consistently held that when a plaintiff fails 'to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his condition,' he cannot establish that he is disabled within the meaning of the [Rehabilitation Act]." Baerga v. Hospital For Special Surgery, No. 97 Civ. 230, 2003 WL 22251294, *6 (S.D.N.Y. September 30, 2003) (quoting Johnson v. St. Clare's Hospital & Health Center, No. 96 Civ. 1425, 1998 WL 236235, *8, (S.D.N.Y.

May 13, 1998) and collecting cases).[7]  Similarly, evidence of disability not presented to the employer at the time of the requested accommodation is inadequate to support a discrimination claim under the Rehabilitation Act.  See Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 725 (2d Cir. 1994) ("an employer is only responsible for employment decisions based on information available to it when it decides.").

No one disputes that Plaintiff's FMS constitutes an impairment under the Rehabilitation Act.  Plaintiff's requests for accommodation and the medical documentation she provided to the VA Hospital support four claimed limitations on major life activities caused by FMS: (1) difficulty sleeping; (2) an inability to work more than 12 consecutive hours; (3) an inability to work the day shift; and (4) an inability to sit for prolonged periods.[8]  Both the hour and shift limitations are plainly insufficient to constitute a substantial limitation on Plaintiff's major life activities.  "[T]he inability to satisfy the requirements of a particular assignment does not mean such a person is regarded as handicapped," but rather "the employee's impairment must limit her employment generally." Heilweil, 32 F.3d at 719.  The fact that Plaintiff was, by her own admission, perfectly capable of performing the physically demanding duties of a night shift RT demonstrates beyond question that she was not limited in her employment generally.

As to the limitations on her ability to sleep, Plaintiff affirms that she has "difficulty falling asleep and remaining asleep."  Brown Aff. ¶ 18.  Her physician's

---

[7] Baerga is an Americans with Disabilities Act case, but the two statutes use identical definitions of "individual with a disability," and ADA case law is applicable to the Rehabilitation Act.  See Francis v. City of Meriden, 129 F.3d 281, 285 n.4 (2d Cir. 1997).
[8] While Plaintiff's requests made reference to other activities, such as walking or standing, that are required by her job, she never suggested that she was limited in her ability to perform any of these activities except in the context of her hour and shift limitations.

letters to the VA Hospital stated that she was "unable to gain restorative sleep" when working 16 hour days, Brown Aff. Exhibit G, and suffered "sleep deprivation" when her "sleep/wake cycle [was] disrupted" by working the day shift. Brown Aff. Exhibit I. Vague assertions of poor sleep, however, do not "show that [Plaintiff's] affliction is any worse than is suffered by a large portion of the nation's adult population." Colwell, 158 F.3d at 644. Compare Felix v. New York City Transit Authority, 154 F.Supp.2d 640, 654 (S.D.N.Y. 2001) (finding a substantial limitation where plaintiff had extensive documentation of inability to sleep more than 1 to 2 hours per night). Moreover, to the extent that Plaintiff's difficulty sleeping was a function of the disruption of her sleep/wake cycle caused by the transfer to the day shift, it was not caused by her FMS and therefore cannot be a basis for a finding of disability. Serow v. Redco Foods, Inc., 187 F.Supp.2d 47, 51 (N.D.N.Y. 2002) ("[Plaintiff] essentially claims that his job affects his sleep because working the third shift requires him to sleep during the day. This is inadequate because *plaintiff has to show that he has an impairment which affects his sleep, not merely a job that affects his sleep.*"). Plaintiff's difficulties sleeping are therefore insufficient to constitute a substantial limitation.

Finally, the Court need not determine whether Plaintiff's inability to sit for prolonged periods constitutes a disability. Plaintiff does not allege that she was denied an accommodation for this alleged limitation after May 19, 2002 and so any claim arising from it would be time-barred. Plaintiff has not shown that she has any disability under the Rehabilitation Act for which she was denied a reasonable accommodation, and so her discrimination claim must be dismissed.

**IV. The Retaliation Claim**

"The Rehabilitation Act expressly adopts the anti-retaliation provisions of Title VII [of the Civil Rights Act of 1964]." Amendola v. Henderson, 182 F.Supp.2d 263, 276 (E.D.N.Y. 2001) (citing 29 U.S.C. § 794a).  Under Title VII, retaliation claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must make out a prima facie case of retaliation. Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999). If the plaintiff presents such a case, the burden shifts to the defendant to present evidence of "a legitimate, nonretaliatory reason for the complained of action." Id.  If the defendant meets this burden, the plaintiff must then demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for retaliation. Id.

Plaintiff asserts that Planzos assigned her to the day shift full-time in June 2002 in retaliation for her March 8, 2002 request that she no longer be assigned to the day shift as part of a mixed day/night schedule.  It is doubtful whether Plaintiff's assertions make out a prima facie case, but even if they do, Plaintiff is unable to rebut Defendant's explanation that Plaintiff was assigned to the day shift, both part-time in March and full-time in June, based on staffing shortfalls on that shift and her own lack of seniority. Plaintiff concedes that she was the least-senior night shift RT, that the night shift RT with less seniority had been reassigned to the day shift in April 2001, and that the least-senior evening shift RT was also placed on the day shift.[9]  Nor is there any doubt that the day shift was understaffed between March and November of 2002.  Plaintiff argues that the

---

[9] While Plaintiff denies knowledge and belief as to the placement of the least-senior evening shift RT in her Local Rule 56.1 Statement, ¶ 19, she explicitly conceded that fact in her deposition. Declaration of Richard E. Rosberger, Exhibit A, 356-357.

10

day shift became fully staffed at some point in October 2002, but that she was not transferred back to the night shift until November 2002. This assertion does nothing to undermine Defendant's explanation. That Planzos reassigned Plaintiff to the night shift the month following the end of the staffing shortage strongly suggests that the shortage was, in fact, Planzos's reason for assigning her there.

Plaintiff's remaining argument[10] is that there was another evening shift RT with less seniority who was not transferred to the day shift, and that Planzos could therefore have transferred the second evening shift RT to the day shift and placed Plaintiff on the evening shift, thereby accommodating her. Plaintiff asserts that Planzos's failure to take this course of action is sufficient evidence that seniority and staffing levels were a mere pretext for retaliation. Even assuming Plaintiff has presented adequate evidence that a second evening RT with less seniority existed,[11] that fact alone would be inadequate to show that Defendant's justification is pretextual or Planzos's actual purpose was retaliatory. Transferring RTs to an understaffed shift in equal numbers, one from the evening shift and one from the night shift, based on seniority within each shift, is at least as logical as following Plaintiff's request which would require three personnel movements as opposed to the two which were implemented. It was not unreasonable to make the adjustments which caused the least disruption to the overall scheduling of RTs, and does not in any way suggest a pretext for retaliation.

---

[10] Plaintiff presents no direct evidence of retaliatory intent by Planzos in assigning Plaintiff to the day shift.
[11] This assertion is made in Plaintiff's Rule 56.1 Statement and Affidavit in Opposition to Defendant's Motion for Summary Judgment, but not in her deposition testimony. Given that the Rule 56.1 Statement pled ignorance as to whether an evening shift RT was placed on the day shift, contradicting Brown's deposition testimony to that effect, it is possible that Plaintiff's Affidavit refers to the same evening shift RT, and therefore similarly contradicts her deposition testimony.

## CONCLUSION

Defendants' motion is GRANTED and Plaintiff's claims are dismissed in their entirety. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
       March 28, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

## CONCLUSION

Defendants' motion is GRANTED and Plaintiff's claims are dismissed in their entirety. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
       March 28, 2007

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge